UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **TYRON TRAMON BATES** | **CIVIL ACTION NO. 25-0215** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **NOLAN BASS, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Tyron Tramon Bates, a prisoner at Tensas Parish Detention Center ("TPDC") proceeding pro se and in forma pauperis, filed this proceeding on approximately February 19, 2025, under 42 U.S.C. § 1983. He names the following defendants: Sheriff Robert Rushing and Warden Nolan Bass.[1,2] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Another inmate stabbed Plaintiff several times on September 26, 2023. [doc. # 1, p. 3]. Plaintiff "went to see the doctor in the emergency room" the same day and received "stitches, staples, and a Tetanus shot[.]" [doc. # 6, p. 1]. He was also given Amoxicillin. *Id.*

Plaintiff "went to medical at [TPDC] several times during the healing process." [doc. # 1, p. 3]. In October 2023, a nurse removed his stitches and staples. [doc. # 6, p. 2]. In November 2023, he received "muscle gel" for his thumb pain and cramps. *Id.* In February 2024, he "went

---

[1] Plaintiff suggests that at all times relevant to this proceeding, Nolan Bass was an assistant warden at TPDC; Patricia Smith was the warden. [doc. # 6, pp. 1-2]. Bass was later promoted to warden.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

back to the nurse because [he] was having constant pain in [his] thumb." *Id.* A nurse told him that he needed surgery but "DOC[3] was not going to pay for it[.]" *Id.* The nurse prescribed him acetaminophen and gabapentin. *Id.* He returned to the nurse in March and April 2024, because he still had pain in his thumb. *Id.* The nurse told him that she could not "give [him] anything else or do anything for [him]." *Id.*

Plaintiff states that Warden Nolan Bass "viewed [his] stabbing" the day after he was stabbed. [doc. # 6, p. 1]. He further states: "In June 2024 I sent an ARP[4] to Nolan Bass complaining about the movement in my thumb and I was not getting any help. [sic]." *Id.* at 2. At the time, Plaintiff "only had limited movement in [his] thumb[,]" and his thumb was not "working right." *Id.* Plaintiff maintains that although Bass was "well aware" of his ARP, Bass never responded. *Id.*

Plaintiff claims that Sheriff Rushing "is in charge of Tensas Parish jails, Sheriff's Office, and detention center" but "has not stepped in to make sure all medical care has been taken care of properly." [doc. # 6, p. 1]. He adds, "Since Sheriff Robert L. Rushing is in charge of all Tensas Parish jails, he should have been aware of my ARP." *Id.* at 2.

Plaintiff states that he still has pain and limited movement in his thumb. [doc. # 1, p. 3]. He states that as of the filing of his initial pleading, he had not had the surgery the nurse recommended. *Id.* The nurse "never stated what exact surgery [he] needed." [doc. # 6, p. 2].

Plaintiff appears to claim that Warden Nolan Bass lied to him "about being kept in" a trustee dormitory until he could heal. [doc. # 6, p. 1]. He also states that he was "placed back in

---

[3] By "DOC," Plaintiff presumably refers to the Louisiana Department of Public Safety and Corrections.

[4] By "ARP," Plaintiff presumably refers to a grievance or other request he filed using the facility's administrative remedy procedure.

2

a dorm where [he] could have been attacked again." *Id.* He appears to allege further that Warden Bass never sent him to "work release even though [he] had [his] detainer removed." *Id.*

Plaintiff seeks $50,000.00 and a transfer to a work release facility. [doc. # 1, pp. 5-6].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,*

---

[5] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555).  "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice.  *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A.*

4

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff's primary claim appears to be that he has not received the surgery, which a nurse told him that he needed, for the damage to his thumb following the stabbing. He states that Warden Nolan Bass "viewed [his] stabbing" the day after he was stabbed. [doc. # 6, p. 1]. He further states: "In June 2024 I sent an ARP to Nolan Bass complaining about the movement in my thumb and I was not getting any help. [sic]." *Id.* at 2. At the time, he "only had limited movement in [his] thumb[,]" and his thumb was not "working right." *Id.* Plaintiff maintains that although Bass was "well aware" of his ARP, Bass never responded. *Id.*

Plaintiff, however, does not plausibly allege that Bass knew, from Plaintiff's ARP, that Plaintiff was exposed to a substantial risk of serious harm in June 2024, approximately eight months after he was stabbed. According to Plaintiff, Warden Bass knew that Plaintiff was stabbed and knew from the ARP that he was not receiving "any help" for his "complaints about

6

the [limited] "movement in [his] thumb." As above, Plaintiff received stiches, staples, a Tetanus shot, and Amoxicillin in September 2023, muscle gel in November 2023, and acetaminophen and gabapentin in February 2024. That Bass knew—after Plaintiff received several forms of medical treatment—Plaintiff was not receiving any help for his concerns about limited movement in his thumb does not plausibly suggest Bass knew Plaintiff was exposed to a *substantial* risk of *serious* harm.[6] At best, Plaintiff's allegations suggest that Bass was aware of only some risk of harm (i.e., limited thumb movement). *See Edwards v. Loggins*, 476 F. App'x 325 (5th Cir. 2012) (jail officials were not deliberately indifferent even if they ignored the detainee's wrist injury for a week and cancelled his scheduled hand surgery, absent a showing that their actions exposed him to substantial risk of harm; the detainee acknowledged that he received medical care, prescription medications, and follow-up medical care for his injuries).[7]

Plaintiff does not allege that Bass knew of the nurse's opinion that Plaintiff needed surgery for his thumb. In fact, he does not allege that the nurse ever forwarded her surgery

---

[6] *See Rombach v. Culpepper*, 2021 WL 2944809, at *5 (5th Cir. July 13, 2021) (finding that no defendant knew the plaintiff was exposed to a substantial risk of serious harm where the plaintiff only told them that he "did not feel well and [that] he wanted to go to the hospital."); *Roberts v. Lessard*, 841 F. App'x 691 (5th Cir. 2021) (correctional center guards were not subjectively aware that an inmate faced substantial risk of harm even though the guards were aware that the inmate was displaying stroke symptoms; the inmate's symptoms, which included sweating, slurring speech, and trouble controlling movements, could also have suggested that he was intoxicated, and it was uncontested that the guards believed the inmate was intoxicated); *see also Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (observing that "[d]eliberate indifference is an extremely high standard to meet").

[7] *See also Parr v. Wright*, 688 F. App'x 286, 287 (5th Cir. 2017) ("His allegations include claims that the defendants prescribed treatment and exercises for prior injuries to his hand that were ineffective and that the defendants delayed in referring him to a nerve specialist. He claims that the delay resulted in muscle loss to his hand. His pleadings do not identify a specific, substantial risk of serious harm to his health that prison officials have knowingly or wantonly disregarded. Accordingly, he has failed to meet the extremely high standard for deliberate indifference necessary to state a claim under the Eighth Amendment.").

recommendation to Bass or anyone else; rather, Plaintiff alleges that the nurse told *him* that he needed an unspecified surgery[8] which DOC would not fund. Plaintiff does allege that the DOC would not pay for his surgery, but he does not allege that Bass is or was responsible for the Department's alleged refusal to fund the surgery.

The undersigned is sympathetic to Plaintiff's injuries and desire for better medical care, but ultimately Plaintiff does not plead a constitutional violation. The Court should therefore dismiss Plaintiff's claims against Warden Bass.

**3. Responding to Grievances**

Plaintiff suggests that Defendants Bass and Rushing failed to respond to grievances he filed under the facility's administrative remedy procedure.

A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his

---

[8] The nurse "never stated what exact surgery [he] needed." [doc. # 6, p. 2].

satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss these claims.

**4. Sheriff Robert Rushing**

As above, Plaintiff claims that Sheriff Rushing "is in charge of Tensas Parish jails, Sheriff's Office, and detention center" but "has not stepped in to make sure all medical care has been taken care of properly." [doc. # 6, p. 1]. He adds, "Since Sheriff Robert L. Rushing is in charge of all Tensas Parish jails, he should have been aware of my ARP." *Id.* at 2.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not allege that Sheriff Rushing affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between Rushing's conduct and any alleged constitutional violation.[9] Instead, he pleads only vicarious

---

[9] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the

liability, essentially naming Sheriff Rushing as a defendant solely because of the position or title he holds. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

At best, Plaintiff suggests that Rushing was negligent, alleging that Rushing "should have been aware of [his] ARP." Allegations of negligence, however, do not state claims of constitutional dimension. *See Daniels v. Williams*, 474 U.S. 327, 336 (1986) (holding that the United States Constitution does not address injuries inflicted by governmental negligence); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (recognizing that plaintiffs must "demonstrate culpability beyond mere negligence or even gross negligence.").

Nor does Plaintiff allege that Sheriff Rushing implemented an unconstitutional policy, practice, custom, or procedure that deprived him of any constitutional right.

Accordingly, the Court should dismiss Plaintiff's claims against Sheriff Rushing.

**5. Statute of Limitations**

Plaintiff appears to claim that Warden Nolan Bass lied to him "about being kept in" a trustee dormitory until he could heal. [doc. # 6, p. 1]. On September 28, 2023, Plaintiff was removed from the trustee dormitory and assigned to "segregation," where he stayed until October 3, 2023, when he was assigned to E-dorm. *Id.* He claims that he was "placed back in a dorm where [he] could have been attacked again." *Id.* He also appears to allege that Warden Bass never sent him to "work release even though [he] had [his] detainer removed." *Id.*

Plaintiff's claims are untimely. District courts are authorized to dismiss claims as

---

constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

frivolous if "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period sua sponte. *See Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999).

The statute of limitations for Section 1983 actions is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1984). Thus, Louisiana's one-year personal injury statute of limitations, under LA. CIV. CODE art 3492, applies here.[10] *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980).

However, the date of accrual for a Section 1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516 (quoting *Vigman v. Community National Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981)). In other words, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Brockman v. Texas Dep't of Crim. Just.*, 397 F. App'x 18, 22 (5th Cir. 2010).

Here, Plaintiff alleges: (i) that Warden Nolan Bass lied to him "about being kept in" a

---

[10] "The Louisiana Legislature has recently repealed its one-year prescription on delictual actions, or torts, and substituted it with a two-year prescription." *Sibley v. Touro LCMC Health*, 2024 WL 5118489, at n.5 (5th Cir. Dec. 16, 2024) (citing LA. CIV. CODE art. 3493.1 (2024)). "But that amendment only applies prospectively to actions arising after July 1, 2024." *Id.* Because Plaintiff alleges that the defendants' actions arose before July 1, 2024, the one-year period applies. *See Stanley v. Morgan*, 120 F.4th 467, 470 (5th Cir. 2024), cert. denied, 2025 WL 663720 (U.S. Mar. 3, 2025).

11

trustee dormitory until he could heal; (ii) that on September 28, 2023, he was removed from the trustee dormitory and assigned to "segregation," where he stayed until October 3, 2023, when he was assigned to E-dorm "where [he] could have been attacked again"; and (iii) that Warden Bass never sent him to "work release even though [he] had [his] detainer removed."

Plainly, Plaintiff knew that Warden Bass lied (allegedly) to him "about being kept" in a trustee dormitory when Plaintiff was removed from the dormitory on September 28, 2023. He also knew on September 28, 2023, that he was assigned to segregation. On October 3, 2023, he plainly knew that he was assigned to E-dorm—where he was allegedly exposed to danger—instead of to work release.

Thus, Plaintiff had one year from September 28, 2023, and October 3, 2023, or until, respectively, September 28, 2024, and October 3, 2024, to file his claims. As he did not file this proceeding until, at the earliest, January 15, 2025,[11] the statute of limitations bars the claims.

The limitations period is subject to state tolling and equitable tolling in certain circumstances. "[E]quitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995) (citing *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)). The plaintiff bears the burden of establishing that equitable tolling applies. *Rotella v. Pederson*, 144 F.3d 892 (5th Cir. 1998); *see also Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) ("We have found that equitable tolling may be appropriate when 'the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'") (quoting *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002)). Tolling can apply

---

[11] Plaintiff signed his initial pleading on January 15, 2025.

where "extraordinary circumstance[s] prevent[]" a plaintiff from filing suit. *Richards v. Gonzales*, 2022 WL 3226621, at *1 (5th Cir. Aug. 10, 2022).

Here, Plaintiff does not argue that his claims were tolled. He does not allege, for instance, that any person's affirmative conduct reasonably induced him to forego filing suit within the limitations period.[12] Accordingly, the Court should dismiss these claims because the statute of limitations bars them.[13]

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Tyron Tramon Bates' claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

---

[12] If Plaintiff contends that his claims were tolled for any reason, he may present his contention in an objection to this Report and Recommendation.

[13] Even assuming Plaintiff's claim that Warden Bass never sent him to "work release" accrued later, Plaintiff would not state a plausible claim. A prisoner has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000). And to the extent Plaintiff claims that a defendant failed to release him from custody, his claim sounds in habeas corpus and is not cognizable in this Section 1983 proceeding.

**proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 2nd day of May, 2025.

_____
Kayla Dye McClusky
United States Magistrate Judge